UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

SHREVEPORT DIVISION

LETRICIA SPANN, ET AL.                    CIV. ACTION NO. 5:24-01502

VERSUS                                     JUDGE TERRY A. DOUGHTY

CITY OF SHREVEPORT, ET AL.                 MAG. JUDGE KAYLA D. MCCLUSKY

## REPORT AND RECOMMENDATION

Before the undersigned Magistrate Judge, on reference from the District Court, is an omnibus motion [doc. # 16] filed by Defendants City of Shreveport and Maverick Caldwell, II, that includes a motion for partial dismissal for failure to state a claim upon which relief can be granted, a motion to strike, and a motion for protective order. The motion is opposed. For reasons detailed below, IT IS RECOMMENDED that the motion to dismiss be GRANTED IN PART and DENIED IN PART. Furthermore, IT IS ORDERED that the motions to strike and for protective order are DENIED.

### Background

On November 1, 2024, Plaintiffs Letricia Spann and Fleen Myles, Jr. (collectively, "Plaintiffs") filed the instant civil rights action, individually and as administrators of the Estate of Fleen Myles, III, against Defendants the City of Shreveport (the "City") and Maverick Caldwell, II ("Caldwell" or "Officer Caldwell") (collectively, "Defendants"). (Compl.). Plaintiffs allege that on November 5, 2023, Officer Caldwell of the Shreveport Police Department ("SPD") shot and killed a gun-toting Fleen Myles, III ("Myles"), who had fled from the police following a traffic stop. *Id*. Plaintiffs seek to recover compensatory and punitive damages and attorney's fees under 42 U.S.C. §§ 1983 and 1988 (Compl., Prayer). The

Complaint sets forth five "cause[s] of action":

(1) Unreasonable seizure in violation of the Fourth and Fourteenth Amendments against Caldwell (individual liability);

(2) Unreasonable seizure in violation of the Fourth and Fourteenth Amendments against the City (*Monell* liability)

(3) Excessive use of force in violation of the Fourth and Fourteenth Amendments against Caldwell (individual liability);

(4) Excessive use of force in violation of the Fourth and Fourteenth Amendments against the City (*Monell* liability); and

(5) Failure to render aid in violation of the Fourteenth Amendment against Caldwell (individual liability).

(Compl.).

On February 3, 2025, Defendants filed the instant motion for partial dismissal for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. They also asserted a motion to strike certain allegations from the Complaint under Rule 12(f) and a motion for protective order presumably under Rule 26(c), all within the same omnibus motion.

On February 21, 2025, Plaintiffs filed their opposition to Defendants' combined motion. (Pl. Opp. Memo. [doc. # 19]). Defendants filed their reply brief on March 7, 2025. (Defs. Reply [doc. # 22]). Accordingly, the matter is ripe.

**<u>Facts Alleged</u>**

The pertinent facts, as set forth in the Complaint, are relatively straight forward. On November 5, 2023, while walking to get some money for a neighbor, Myles accepted a ride from his friend, Jacobi Brown, in his white Chevrolet Impala, in the hopes of avoiding the SPD who

were "stalking individuals up and down the block." *Id.* at ¶¶ 17–20.[1]  Nonetheless, around 8:45

a.m., SPD Corporal Sammi Reich stopped the Impala for a window tint violation.  *Id.* at ¶ 21.

Apart from Jacobi Brown, Myles was the only other occupant in the vehicle.  *Id.*  One minute

later, Officers Caldwell and Tia Stephens ("Stephens") arrived on scene to assist with the traffic

stop.  *Id.* at ¶ 22.

Upon arrival, Officers Stephens and Caldwell opened the passenger-side door and

ordered Myles to extinguish his cigarette and to produce his driver's license.  *Id.* at ¶¶ 24–25.

Myles explained that he did not possess a driver's license but offered to show the officers an

insurance card on his phone.  *Id.* at ¶ 26.  Officer Caldwell replied that the insurance card would

not suffice and asked whether Myles had an "I.D."  *Id.* at ¶ 27.  When Myles advised Caldwell

that he did not have an I.D., Caldwell ordered him out of the vehicle.  *Id.* at ¶¶ 27–28.  Myles

exited the vehicle and began walking around the open passenger door.  *Id.* at ¶ 29.  Caldwell

asked Myles where he was going and directed him toward the rear of the vehicle.  *Id*. at ¶ 30.

Myles, however, continued to walk around the open passenger door and then, inexplicably, began

running down the street.  *See* Compl., ¶ 31.  Caldwell immediately gave chase.  *Id.* at ¶ 32.

Roughly ten seconds later, Caldwell unsuccessfully attempted to deploy his taser, so the

chase continued.  *Id.* at ¶ 33.  Caldwell chased Myles through an alley, yelling, "I'll shoot you."

*Id.* at ¶ 35.  Caldwell eventually pursued Myles into the carport of the home located at 2725

Rosemont Street.  *Id.* at ¶¶ 37–38.  As Caldwell entered the carport, he again stated "I'll shoot

you."  *Id.* at ¶ 42.

---

[1] In the months leading up to the subject incident, the SPD had been harassing Myles for his refusal to act as a confidential informant against his nephew.  (Compl., ¶¶ 12–16).

3

In the carport, Myles lost his balance and stumbled head-long into a chain link fence. *Id.* at ¶ 46. As Myles extended his hands to brace himself against the fence, Caldwell observed a firearm in Myles' right hand. *Id.* at ¶ 47. In response, Caldwell dropped his taser and drew his own firearm. *Id.* at ¶ 48. As Myles attempted to stand, he looked to his right at Caldwell before turning to his left to continue running. *Id.* at ¶ 50. Without warning, however, Caldwell opened fire on Myles. *Id.* at ¶¶ 52, 55.

Caldwell fired four rounds at Myles. *Id.* at ¶ 54. One shot entered Myles' right bicep from the side, exiting near his armpit and reentering his chest; a second shot hit Myles in the lower back; and a third shot hit him in his left buttock area. *Id.* at ¶ 54. Throughout this time, Myles kept his firearm pointed at the ground and never pointed the weapon at Caldwell. *Id.* at ¶ 51.

After he was shot, Myles immediately fell face first to the ground. *Id.* at ¶ 56. Caldwell then began to yell for Myles to drop his firearm before proceeding to handcuff Myles' hands behind his back. *Id.* at ¶¶ 57-58. Caldwell neither attempted CPR nor administered any life-saving measures until additional SPD officers arrived on scene. *Id.* at ¶ 60.

## <u>Analysis</u>

### I.    Motion to Dismiss

Defendants contend that Plaintiffs' allegations are insufficient to state a claim for relief under their first, second, and fifth causes of action, i.e., two of the three individual capacity claims against Caldwell, for which he invoked qualified immunity, and the first *Monell*[2] claim

---

[2] A plaintiff may sue a municipality for a violation of federal rights under 42 U.S.C. § 1983. This type of municipal liability claim is also referred to as a *Monell* claim, which takes its name from the Supreme Court decision that recognized the cause of action, *Monell v. Dep't of Soc.*

4

against the City for the alleged unreasonable seizure.  (M/Dismiss, Memo., pgs. 1-2).  Later in their brief, however, Defendants further argue that Plaintiffs do not allege facts to state a *Monell* claim for excessive use of force based on an official policy of the City, an argument that implicates Plaintiffs' fourth cause of action.  *Id*., pgs. 11-13.

The Court first will set forth the Rule 12(b)(6) standard, then address the arguments pertaining to the individual capacity claims before turning to the arguments directed at the *Monell* claim(s).

a)      Rule 12(b)(6) Standard

The Federal Rules of Civil Procedure sanction dismissal where the plaintiff fails "to state a claim upon which relief can be granted."  FED. R. CIV. P. 12(b)(6).  A pleading states a claim for relief when, *inter alia*, it contains a "short and plain statement . . . showing that the pleader is entitled to relief . . ."  FED. R. CIV. P. 8(a)(2).

To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 667-668 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  A claim is facially plausible when it contains sufficient factual content for the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*.  *Plausibility* does not equate to *possibility* or *probability*; it lies somewhere in between.  *Iqbal,* 556 U.S. at 556.  Plausibility simply calls for enough factual allegations to raise a reasonable expectation that discovery will reveal evidence to support the elements of the claim.  *See Twombly*, 550 U.S. at 556.  Assessing whether a complaint states a plausible claim for relief is a "context-specific

---

*Servs. of City of New York*, 436 U.S. 658 (1978)).  *See Edwards v. City of Balch Springs, Texas*, 70 F.4th 302, 307 (5th Cir. 2023).

task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal,* 556 U.S. at 679 (citation omitted).  A well-pleaded complaint may proceed even if it strikes the court that actual proof of the asserted facts is improbable and that recovery is unlikely. *Twombly*, 550 U.S. at 556.

Although the court must accept as true all factual allegations set forth in the complaint, the same presumption does not extend to legal conclusions.  *Iqbal,* 556 U.S. at 678.  A pleading comprised of "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" does not satisfy Rule 8.  *Id*.  Moreover, Rule 12(b)(6) authorizes courts to dismiss a claim on the basis of a dispositive issue of law, notwithstanding that it otherwise might be well-pleaded.  *See Neitzke v. Williams*, 490 U.S. 319, 326-327 (1989) (citations omitted).

Nevertheless, "[t]he notice pleading requirements of Federal Rule of Civil Procedure 8 and case law do not require an inordinate amount of detail or precision."  *Gilbert v. Outback Steakhouse of Florida Inc.*, 295 Fed. App'x. 710, 713 (5th Cir. 2008) (citations and internal quotation marks omitted).  Further, "a complaint need not pin plaintiff's claim for relief to a precise legal theory.  Rule 8(a)(2) of the Federal Rules of Civil Procedure generally requires only a plausible 'short and plain' statement of the plaintiff's claim, not an exposition of [her] legal argument."  *Skinner v. Switzer*, 562 U. S. 521, 530 (2011) (citation omitted).  Indeed, "[c]ourts must focus on the substance of the relief sought and the allegations pleaded, not on the label used."  *Gearlds v. Entergy Servs., Inc.*, 709 F.3d 448, 452 (5th Cir. 2013) (citations omitted).  "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Twombly,* 550 U.S. at 555).

When considering a motion to dismiss, courts generally are limited to the complaint and its proper attachments.  *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008)

6

(citation omitted).  However, courts may rely upon "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."  *Id.*

       b)    <u>Individual Liability against Caldwell</u>

          i)    *Qualified Immunity*

Section 1983 provides that any person who, under color of state law, deprives another of "any rights, privileges or immunities secured by the Constitution and laws shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . ." *Harrington v. Harris*, 118 F.3d 359, 365 (5th Cir. 1997) (citing 42 U.S.C. § 1983).  Section 1983, however, does not create any substantive rights; it simply provides a remedy for the rights designated therein.  *Id.*  "Thus, an underlying constitutional or statutory violation is a predicate to liability under § 1983."  *Id.*  (citation omitted).

To state a cognizable claim for relief under 42 U.S.C. § 1983, "a plaintiff must plead two—and only two—allegations . . . First, the plaintiff must allege that some person has deprived him of a federal right.  Second, he must allege that the person who has deprived him of that right acted under color of state or territorial law."  *Arnold v. Williams*, 979 F.3d 262, 266-67 (5th Cir. 2020) (citation and internal quotation marks omitted).  Accordingly, a claim against a state actor in his personal capacity need not be attributed to a governmental "policy or custom." *Hafer v. Melo*, 502 U.S. 21, 25 (1991).

In addition, when, as here, a plaintiff seeks money damages from government officials in their individual capacities under § 1983, the affirmative defense of qualified immunity is available to protect defendants "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would

have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  The qualified immunity doctrine balances two often conflicting interests: "the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Id*.  As such, "[t]he protection of qualified immunity applies regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Id*. (citations and internal quotation marks omitted).

In effect, qualified immunity "gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Mendenhall v. Riser*, 213 F.3d 226, 230 (5th Cir. 2000) (citing *Malley v. Briggs,* 475 U.S. 335, 343, 341 (1986) (internal quotation marks omitted).

Qualified immunity is nominally characterized as an affirmative defense.  However, once raised by defendants, it devolves upon the plaintiff to negate the defense by showing that the official's conduct violated clearly established law.  *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008) (citation omitted).  Plaintiff's burden is two-pronged.  *Club Retro LLC v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009) (quoted sources omitted).  First, a plaintiff must demonstrate that a defendant violated a constitutional right under current law.  *Id*.  "Second, [plaintiff] must claim that the defendant's actions were objectively unreasonable in light of the law that was clearly established at the time of the actions complained of." *Id*.  (quoted source and internal quotation marks omitted).  The courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances of the particular case at hand." *Collier v. Montgomery*, 569 F.3d 214, 217 (5th Cir.

2009) (citation omitted).

A law is clearly established when there exists "controlling authority—or a 'robust consensus of persuasive authority'—that defines the contours of the right in question with a high degree of particularity." *Hogan v. Cunningham*, 722 F.3d 725, 735 (5th Cir. 2013) (quoted source omitted). Although a case directly on point is not required, "existing precedent must have placed the statutory or constitutional question *beyond debate.*" *Id.* (citations and internal quotation marks omitted). "Courts must not define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced." *D.C. v. Wesby*, 583 U.S. 48, 63–64 (2018) (quoted source and internal quotation marks omitted). Further, "[a] rule is too general if the unlawfulness of the officer's conduct does not follow immediately from the conclusion that [the rule] was firmly established." *Id.* Nonetheless, there is the "rare possibility that, in an obvious case, analogous case law is not needed because the unlawfulness of the [challenged] conduct is sufficiently clear even though existing precedent does not address similar circumstances." *Joseph on behalf of Estate of Joseph v. Bartlett*, 981 F.3d 319, 330 (5th Cir. 2020) (citations and internal quotation marks omitted).

In the end, the question becomes whether the right is "sufficiently clear that every reasonable official would [have understood] that what he is doing violates that right." *Hogan*, 722 F.3d at 735 (citations and internal quotation marks omitted). Because it is plaintiff's burden to establish that the challenged conduct violated clearly established law, the district court may, but is not obliged to, undertake the clearly established law analysis on its own. *Joseph*, 981 F.3d at 338 (court need not limit its analysis to the cases cited by plaintiff).

When responding to a defendant's invocation of qualified immunity within the context of a motion to dismiss, the plaintiff need not "exceed the short-and-plain-statement standard of Rule 8." *Arnold v. Williams*, 979 F.3d at 267 (citation omitted). Instead, "a plaintiff seeking to overcome qualified immunity must plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm he has alleged and that defeat a qualified immunity defense with equal specificity." *Id.* (quoting *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012)). In other words, plaintiff must plead qualified immunity facts with the "minimal specificity" required by *Twombly* and *Iqbal*. *Id.* ("an assertion of qualified immunity in a defendant's answer or motion to dismiss does not subject the complaint to a heightened pleading standard.").

Caldwell challenges Plaintiffs' first and fifth causes of action asserted against him under the Fourth and Fourteenth Amendments for unreasonable seizure and the failure to render aid. The Court will address each claim, in turn.

*ii)      Unreasonable Seizure*

The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST. AMEND. IV.[3] The protections of the Fourth Amendment extend to the states pursuant to the Fourteenth Amendment. *Dunaway v. New York*, 442 U.S. 200, 207 (1979) (citation omitted). "A person is seized by the police and thus entitled to challenge the government's action under

---

[3] *Graham v. Connor*, 490 U.S. 386, 395 (1989) ("*all* claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard . . .").

the Fourth Amendment when the officer, by means of physical force or show of authority, terminates or restrains his freedom of movement, through means intentionally applied." *Brendlin v. California*, 551 U.S. 249, 254 (2007) (citing, *inter alia*, *Terry v. Ohio*, 392 U.S. 1, 30 (1968)) (internal quotation marks omitted).

A traffic stop constitutes a seizure under the Fourth Amendment, and its legality is analyzed under the framework set forth in *Terry v. Ohio*, 392 U.S. 1 (1968). *United States v. Lopez-Moreno*, 420 F.3d 420, 430 (5th Cir. 2005) (citations omitted). Under *Terry's* two-part reasonable suspicion inquiry, the court examines "whether the officer's action was: (1) justified at its inception; and (2) reasonably related in scope to the circumstances which justified the interference in the first place." *Id*. (quoting *Terry*, 392 U.S. 19–20) (internal quotation marks omitted).

A. Initial Stop

Under the first prong, a traffic stop is justified at its inception when an officer has a reasonable suspicion that "some sort of illegal activity, such as a traffic violation, occurred, or is about to occur, before stopping the vehicle." *Lopez-Moreno*, 420 F.3d at 430. Reasonable suspicion exists when the officer has "a particularized and objective basis for suspecting legal wrongdoing" based on the totality of the circumstances. *Id.* (citations and internal quotations omitted). An officer must be able to "point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the search and seizure." *Id.*

"A police officer may stop a vehicle if he has probable cause to believe a traffic violation has occurred." *United States v. Khanalizadeh*, 493 F.3d 479, 482 (5th Cir. 2007) (citing *United States v. Cole,* 444 F.3d 688, 689 (5th Cir. 2006) and *Whren v. United States*, 517 U.S. 806, 810

(1996)). "Probable cause exists when the totality of facts and circumstances within a police officer's knowledge at the moment of [a stop or] arrest are sufficient for a reasonable person to conclude that the suspect had committed, or was in the process of committing, an offense." *United States v. Zavala*, 541 F.3d 562, 575 (5th Cir. 2008) (citations omitted). The constitutional reasonableness of traffic stops does not depend on the actual motivations of the individual officers involved. *Whren*, 517 U.S. at 813. Therefore, "[s]ubjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis." *Id*.

According to the Complaint, Officer Reich stopped the Impala carrying Myles because of a window tint violation. *See, e.g.*, La. R.S. 32:361.1 *et seq*. Defendants argue, and Plaintiffs concede, that they do not have standing to challenge the validity of the stop. Accordingly, the Court finds that the traffic stop was justified at its inception.

B. Continued Detention

Under *Terry*'s second prong, the detention "must be temporary and last no longer than is necessary to effectuate the purpose of the stop." *United States v. Brigham*, 382 F.3d 500, 507 (5th Cir. 2004). "During a traffic stop, a police officer may examine a driver's license and vehicle registration, [and] run a computer check on the driver and the vehicle." *Zavala*, 541 F.3d at 576. An officer "must ensure that the driver does not have a warrant or a suspended license, and that the vehicle is registered and not reported stolen. These checks are routine and quickly performed." *Id.* at 577. An officer "may also ask about the purpose and itinerary of the occupant['s] trip as part of [his] investigation," because these questions are "reasonably related in scope to his investigation of the circumstances that caused the stop." *United States v. Pack*, 612 F.3d 341, 350 (5th Cir.), *opinion modified on denial of reh'g*, 622 F.3d 383 (5th Cir. 2010).

An officer also may ask a car *passenger* to identify himself and then run computer checks on his driver's license and background. *Pack*, 612 F.3d at 351.

" [T]he tolerable duration of police inquiries in the traffic-stop context is determined by the seizure's mission—to address the traffic violation that warranted the stop and attend to related safety concerns." *Rodriguez v. United States*, 575 U.S. 348, 354 (2015). "Because addressing the infraction is the purpose of the stop, it may last no longer than is necessary to effectuate th[at] purpose." *Id.* (internal quotations omitted). The authority for the seizure "ends when tasks tied to the traffic infraction are—or reasonably should have been—completed." *Id.* Thus, although certain unrelated inquiries that do not lengthen a roadside detention are permissible, a traffic stop "can become unlawful if it is prolonged beyond the time reasonably required to complete [its] mission." *Illinois v. Caballes*, 543 U.S. 405, 407 (2005).

"In order to continue a detention after such a point, the officer must have a reasonable suspicion supported by articulable facts that a crime has been or is being committed." *United States v. Santiago*, 310 F.3d 336, 342 (5th Cir. 2002). "[I]f additional reasonable suspicion arises in the course of the stop and before the initial purpose of the stop has been fulfilled, then the detention may continue until the new reasonable suspicion has been dispelled or confirmed." *United States v. Lopez-Moreno*, 420 F.3d 420, 431 (5th Cir. 2005) (citations omitted).

Plaintiffs argue that Caldwell's seizure of Myles outside the vehicle was unreasonable because the circumstances suggest that Caldwell had no credible fear for officer safety or a reasonable suspicion to believe that Myles was involved in criminal activity. Plaintiffs' argument, however, is inapposite, for "when an officer stops a vehicle for a valid traffic purpose, he may—without any suspicion—order the driver and any passengers to exit the vehicle."

13

*United States v. Meredith*, 480 F.3d 366, 370 (5th Cir. 2007) (citing *Pennsylvania v. Mimms,* 434 U.S. 106, 111 (1977); *Maryland v. Wilson,* 519 U.S. 408, 414-415 (1997)).  Furthermore, the officer need not articulate a specific safety concern for the precautionary measure because "officer safety is potentially threatened *whenever* officers stop a vehicle."  *See United States v. Ibarra-Sanchez*, 199 F.3d 753, 761 (5th Cir. 1999) (citing *Mimms,* 98 S.Ct. at 333) (emphasis added).[4]  Accordingly, Caldwell did not violate the Fourth Amendment when he asked for Myles' identification and ordered him to exit the vehicle.

Once Myles exited the car, Myles ignored Caldwell's command to proceed to the rear of the vehicle, and, instead, broke out in headlong flight.  Caldwell contends that, "[o]nce Myles failed to produce identification and fled the scene, Myles had committed the offense of resisting an officer in violation of La. R.S. § 14:108, creating not only reasonable suspicion of additional criminal activity but probable cause for arrest."  (M/Dismiss, pg. 9).

Plaintiffs dispute that Caldwell had probable cause to arrest Myles pursuant to Louisiana Revised Statute § 14:108, for either flight from an officer or for failure to provide identification. The statute provides, in relevant part, that,

> A.  Resisting an officer is the intentional interference with, opposition or resistance to, or obstruction of an individual acting in his official capacity and authorized by law to make a lawful arrest, lawful detention, or seizure of property or to serve any lawful process or court order when the offender knows or has reason to know that the person arresting, detaining, seizing property, or serving process is acting in his official capacity.
>
> B.  (1) The phrase "obstruction of" as used in this Section shall, in addition to its common meaning, signification, and connotation, mean the following:

---

[4] In *Wilson*, the dissent observed that the majority's opinion "applies equally to traffic stops in which there is *not even a scintilla of evidence of any potential risk to the police officer*."  *Wilson*, 519 U.S. at 416 (emphasis added).

     (a)  Flight by one sought to be arrested before the arresting officer can restrain him and after notice is given that he is under arrest.

*     *     *

     (c)  Refusal by the arrested or detained party to give his name and make his identity known to the arresting or detaining officer or providing false information regarding the identity of such party to the officer.

LA. R.S. § 14:108A-B(1)(a) & (c).

"The gravamen of the crime of resisting an officer consists of the intentional obstruction of an officer acting in his official capacity." *Perry v. City of Bossier*, Civ. Action No. 17-0583, 2018 WL 5074674, at *10 (W.D. La. Oct. 17, 2018) (quoting, *inter alia*, *State v. Boyer*, 967 So. 2d 458, 474 (La. 2007)). The offense has three elements: (1) actual obstruction, interference, or resistance to an officer performing his official duties; (2) the officer's engagement in one of four lawful activities: arrest, detention, seizure of property, or service of process; and (3) the defendant's actual or constructive knowledge that the officer is performing one of these duties. *Id.* (citations and quotation marks omitted).

According to the statute, "obstruction" includes "flight" by one sought to be arrested after notice is given that he is under arrest. LA. R. S. § 14:108A-B(1)(a). Here, Plaintiffs do not allege in their Complaint that Caldwell advised Myles that he was under arrest before he took flight. Accordingly, they conclude that Myles could not have committed obstruction by flight.[5] However, by failing to comply with Caldwell's command to go stand at the rear of the car and,

---

[5] Of course, if it turns out that the traffic stop occurred in a high crime area, then Myles' unprovoked flight upon encountering police provided Caldwell with an independent basis for reasonable suspicion. *United States v. Williams*, 79 Fed. App'x. 677, 681 (5th Cir. 2003) (citing *Illinois v. Wardlow,* 528 U.S. 119, 124 (2000)); *United States v. Darrell*, 945 F.3d 929, 938 (5th Cir. 2019) (defendant's behavior is a prototypical case of suspicious activity: flight from police in a high-crime area)

15

instead, fleeing, Myles arguably interfered with, opposed, or resisted Officers Reich and Caldwell who had detained both Brown and Myles pursuant to the traffic stop. Consequently, Caldwell had reasonable suspicion that Myles had committed the crime of resisting an officer, thereby providing him with grounds to pursue Myles and to detain or seize him.[6]

Plaintiffs also assert that Caldwell unreasonably seized Myles when he attempted to tase him and/or threatened to shoot him during the chase. However, "[i]n the Fourth Amendment context, a seizure requires an intentional acquisition of physical control." *Singleton v. Casanova*, No. 22-50327, 2024 WL 2891900, at *4 (5th Cir. June 10, 2024) (citing *Brower v. Cnty. of Inyo*, 489 U.S. 593, 596 (1989)) (internal quotation marks omitted). "A person is seized by the police and thus entitled to challenge the government's action under the Fourth Amendment when the officer, by means of physical force or show of authority, terminates or restrains his freedom of movement, *through means intentionally applied.*" *Id*. (quoting *Brendlin v. California*, 551 U.S. 249, 254 (2007) (internal quotations omitted). Until then, at most, there is an attempted seizure. *Id*. (citing, *inter alia*, *California v. Hodari D.*, 499 U.S. 621, 626, n.2 (1991)).

In other words, the Fourth Amendment was not implicated until Caldwell shot Myles. Whether Caldwell acted reasonably when he made the fateful decision to shoot Myles is a separate issue, not presently before the Court. One thing is clear, however, the Court may

---

[6] Plaintiffs contend that they are entitled to discovery to resolve why Caldwell sought to detain Myles outside of the vehicle. (Pl. Opp. Memo., pg. 9). It is manifest, however, that "a plaintiff asserting constitutional claims against an officer claiming QI must survive the motion to dismiss without *any* discovery." *Carswell v. Camp*, 54 F.4th 307, 311 (5th Cir. 2022). This is consistent with the maxim that qualified immunity must be adjudicated at the earliest possible opportunity. *Id*.

consider all of the events leading up to the use of force.  *See Barnes v. Felix*, 605 U.S. ___, 145 S.Ct. 1353, 1357–58 (2025).

Plaintiffs further assert that Caldwell unreasonably seized Myles when he handcuffed him after he shot and subdued him.  *See* Compl., ¶ 209.  However, "after making a proper *Terry* stop, the police are within their constitutional authority to pat down a party and to handcuff him for their personal safety even if probable cause to arrest is lacking."  *United States v. Jordan*, 232 F.3d 447, 449 (5th Cir. 2000) (citation omitted).  According to Plaintiffs, after shooting Myles, Caldwell yelled at him to drop his firearm, which suggests that Myles still was holding the firearm, despite having been shot.  *See* Compl., ¶ 57.  While the Complaint says that Caldwell then approached Myles' "limp body" and handcuffed him, this was not unreasonable under the circumstances to ensure that Myles was unable to retrieve the firearm or to deploy another hidden weapon.  *See Jordan*, 232 F.3d at 449 (officer did not unreasonably handcuff a detainee where the detained ignored commands, acted nervously, moved his hands erratically, and walked towards the officer in an aggressive manner); *Allen v. Hays*, 65 F.4th 736, 746 (5th Cir. 2023) (if an officer reasonably thought that he saw a suspect with a gun, then it would have been reasonable for the officer to handcuff the suspect notwithstanding that the suspect had been shot six times, crashed into a tree, and pulled from his truck onto the ground).

In sum, the Court finds that Plaintiffs have not asserted facts to support a plausible claim for unreasonable seizure against Defendant, Caldwell.  Furthermore, even if they had, they still must "identify a case where an officer acting under similar circumstances . . . was held to have violated the Fourth Amendment."  *Wesby*, 583 U.S. at 64.  Although Plaintiffs cite some cases for the general proposition that reasonable suspicion or probable cause is required to detain

17

someone, *see* Pl. Opp. Brief, pgs. 11-12, they do not cite any binding authority under similar facts such that every reasonable officer would have understood that Caldwell's actions violated the Constitution.  Accordingly, Caldwell is entitled to immunity as to Plaintiffs' unreasonable seizure claim(s) under the Fourth Amendment.  *See Perry*, 2018 WL 5074674, at *8  (finding that defendant was entitled to qualified immunity because plaintiff did not identify a case holding under similar facts that handcuffing a suspect was unreasonable or that there was no probable cause to arrest plaintiff under La. R.S § 14:108).

    *ii)*    *Failure to Render Timely Medical Aid*

    The Fifth Circuit has recognized that "[a]fter the initial incidents of a seizure have concluded and an individual is being detained by police officials but has yet to be booked, an arrestee's right to medical attention, like that of a pre-trial detainee, derives from the Fourteenth Amendment."  *Hill v. Carroll Cnty., Miss.*, 587 F.3d 230, 237–38 (5th Cir. 2009) (quoting *Nerren v. Livingston Police Department,* 86 F.3d 469, 473 (5th Cir. 1996)).

    "The Fourteenth Amendment guarantees pretrial detainees a right 'not to have their serious medical needs met with deliberate indifference on the part of the confining officials.'"  *Dyer v. Houston*, 964 F.3d 374, 380 (5th Cir. 2020) (quoting *Thompson v. Upshur Cty., Tex.*, 245 F.3d 447, 457 (5th Cir. 2001)).  "This guarantee require[s] the responsible government or governmental agency to provide medical care to persons . . . who have been injured while being apprehended by the police."  *Batyukova v. Doege*, 994 F.3d 717, 732 (5th Cir. 2021) (quoted source and internal quotation marks omitted).  These protections typically apply to pretrial detainees who have been apprehended on account of criminal activity.  *Id*. (citing *Dyer*, 964 F.3d at 380)).

To prevail on a deliberate indifference claim, a plaintiff must show that (1) the officer was "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," and (2) the officer "actually drew that inference." *Dyer* 964 F.3d at 380 (quoting *Domino v. Tex. Dep't of Criminal Justice*, 239 F.3d 752, 755 (5th Cir. 2001)). Serious harm is not just any harm; rather, the medical need must be so apparent that even laymen would recognize that care is required." *Carmona v. City of Brownsville*, 126 F.4th 1091, 1097 (5th Cir. 2025) (quoted source and internal quotation marks omitted). Furthermore, "deliberate indifference cannot be inferred merely from a negligent or even a grossly negligent response to a substantial risk of serious harm." *Thompson v. Upshur Cnty., TX*, 245 F.3d 447, 459 (5th Cir. 2001). Consequently, "[d]eliberate indifference is an extremely high standard to meet. *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001); *see Alton v. Tex. A & M Univ.*, 168 F.3d 196, 201 (5th Cir. 1999) ("Actions and decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference.").

Six months prior to the incident in this case, the Fifth Circuit held that an officer plausibly violated clearly established law where he "stood by for six minutes without performing any medical care or calling for medical backup, aware that he had shot [the decedent] several times and witnessed him crash into a tree, and after he had radioed for police backup for himself." *Allen*, 65 F.4th at 748. Here, Plaintiffs allege that Caldwell shot Myles three times before handcuffing him, but did not attempt CPR or begin any other life-saving measures until additional SPD officers arrived on scene. (Compl., ¶¶ 54-60). Caldwell then let Myles bleed out with his hands handcuffed behind his back. *Id.*, ¶ 264.

In their motion to dismiss, Defendants emphasize that Caldwell began life-saving

measures once additional SPD officers arrived on scene, which was "only seconds after the shots were fired." (M/Dismiss, Memo., pg. 14).[7] However, the Complaint does not specify how long it took before additional SPD officers arrived on scene. Therefore, the delay in rendering medical care remains indeterminate. Furthermore, there are no allegations that Caldwell even requested medical backup. Drawing all reasonable inferences in favor of the nonmoving party,[8] the Court finds that Plaintiffs have alleged sufficient facts to plausibly show that Caldwell was deliberatively indifferent to Myles' serious medical needs, which was a violation of clearly established law. *See Allen*, 65 F.4th at 748. Accordingly, Plaintiffs have alleged sufficient facts in their Complaint to overcome Caldwell's invocation of qualified immunity as to their claim for failure to render timely medical care. *Id.*

c)    <u>Municipal Liability against the City</u>

To establish municipal liability under § 1983, a plaintiff must prove that "(1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right." *Vardeman v. City of Houston*, 55 F.4th 1045, 1052 (5th Cir. 2022) (quoting *Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 847 (5th Cir. 2009)); *see Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691-94 (1978). "A municipality is almost never liable for an isolated unconstitutional act on the part of an

---

[7] Defendants also argue that Plaintiffs do not allege the extent of Caldwell's medical training for the purpose of determining deliberate indifference. In *Batyukova v. Doege*, however, the Fifth Circuit determined that an officer shooting someone was sufficient to require the officer to provide reasonable medical care. *See Batyukova,* 994 F.3d at 732; *see also Allen*, 65 F.4th at 748 (finding that plaintiff stated a claim against an officer for failure to provide medical care to a gunshot victim without mentioning the medical training or knowledge of the shooting officer).

[8] *See Kelson v. Clark*, 1 F.4th 411, 418 (5th Cir. 2021) (drawing all reasonable inferences in favor of the nonmoving party on a motion to dismiss).

employee; it is liable only for acts directly attributable to it through some official action or imprimatur." *Peterson*, 588 F.3d at 847 (internal quotations omitted). Further, municipalities are not liable under § 1983 on the theory of *respondeat superior. Id.*; *O'Quinn v. Manuel*, 773 F.2d 605, 608 (5th Cir. 1985).

The official policy requirement may be met in various ways. An "official policy" means:

1. A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or

2. A persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority. Actions of officers or employees of a municipality do not render the municipality liable under § 1983 unless they execute official policy as above defined.

*Armstrong v. Ashley*, 60 F.4th 262, 276 (5th Cir. 2023) (quoting *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984) (en banc)). The existence of a custom or policy may be shown by demonstrating (1) a pattern of unconstitutional conduct by municipal actors or employees; or (2) a single unconstitutional act by a final policymaker. *Zarnow v. City of Wichita Falls, Tex.*, 614 F.3d 161, 169 (5th Cir. 2010).

"In a Section 1983 case, the burden of proving the existence of an unconstitutional municipal policy or established custom rests upon the plaintiff." *McConney v. City of Houston*, 863 F.2d 1180, 1184 (5th Cir. 1989). "To proceed beyond the pleading stage, a complaint's description of a policy or custom and its relationship to the underlying constitutional violation . . . cannot be conclusory; it must contain specific facts." *Peña v. City of Rio Grande City*, 879

F.3d 613, 622 (5th Cir. 2018) (citation and internal quotation marks omitted).[9]  Therefore, to

plausibly plead a widespread practice as required to support municipal liability, a plaintiff must

describe more than the lone incident that gave rise to his own injury.  *Id*. (citation omitted).

> It is manifest that
>
> to find a municipality liable for a policy based on a pattern, that pattern must have
> occurred for so long or so frequently that the course of conduct warrants the
> attribution to the governing body of knowledge that the objectionable conduct is
> the expected, accepted practice of city employees.  A pattern requires similarity,
> specificity, and sufficiently numerous prior incidents.

*Davidson*, 848 F.3d at 396 (citations and internal quotation marks omitted).  Ultimately,

"isolated acts cannot establish the existence of a custom or practice."  *Guillot on behalf of T.A.G.*

*v. Russell*, 59 F.4th 743, 752 (5th Cir. 2023) (citing *Burge v. St. Tammany Parish*, 336 F.3d 363,

370 (5th Cir. 2003)).  Rather, prior incidents "must have occurred for so long or so frequently

that the course of conduct warrants the attribution to the governing body of knowledge that the

objectional conduct is the expected, accepted practice."  *Id*. (citation omitted).

ii)      *Unreasonable Seizure*

Plaintiffs allege that the City has "developed and maintained policies, customs, and/or

patterns and practices of unreasonably seizing individuals in the Shreveport community,

including seizing individuals without reasonable suspicion or probable cause and seizing

individuals in an unreasonable manner under the circumstances."  (Compl., ¶ 225).  They

contend that these policies violate Myles' right to be free from unreasonable seizures under the

---

[9] For example, an allegation that the underlying unconstitutional act represents "a persistent,
widespread practice" by city employees that is "so common and well settled as to constitute a
custom . . ." of the city does not contain any specific facts.  *Ratliff v. Aransas Cnty., Texas*, 948
F.3d 281, 285 (5th Cir. 2020).

Fourth Amendment and his substantive due process rights under the Fourteenth Amendment. *See* Compl., ¶ 232.

Although not raised by Defendants, the Court observes that, "*all* claims that law enforcement officers have used excessive force . . . in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment." *Tyson v. Sabine*, 42 F.4th 508, 515 (5th Cir. 2022) (quoting *Graham v. Connor,* 490 U.S. 386, 395 (1989)). Therefore, "a due process claim is viable only when the alleged misconduct is not susceptible to proper analysis under the Fourth Amendment." *Estate of Parker v. Mississippi Dep't of Pub. Safety*, 140 F.4th 226, 244 (5th Cir. 2025) (citation and internal quotation marks omitted). Because the parties herein do not dispute that a seizure occurred, the Fourth Amendment governs, thereby foreclosing Plaintiffs' Fourteenth Amendment substantive due process claim. *Id.*; *see also Lewis v. Huval*, Civ. Action No. 16-1280, 2020 WL 2544811, at *10 (W.D. La. May 4, 2020), *R&R adopted,* 2020 WL 2551032 (W.D. La. May 19, 2020) (plaintiff's claim is governed by the Fourth Amendment; therefore, his substantive due process claim fails as a matter of law).

Furthermore, because Plaintiffs have not stated a viable claim for unreasonable seizure under the Fourth Amendment against Caldwell, *see* discussion, *supra*, they also do not state a plausible claim for municipal liability against the City premised upon the same alleged constitutional violation. *See Windham v. Harris Cnty., Texas*, 875 F.3d 229, 243 (5th Cir. 2017) (because plaintiff fails to demonstrate the existence of a constitutional violation, the county is entitled to judgment on his *Monell* claim); *Doe ex rel. Magee v. Covington Cty. Sch. Dist. ex rel. Keys*, 675 F.3d 849, 866–67 (5th Cir. 2012) (en banc) ("Without an underlying constitutional

violation, an essential element of municipal liability is missing.").

    *iii)*     *Use of Force Official Policy*

For purposes of this motion, Defendants acknowledge that Plaintiffs have set forth more than threadbare recitations of the elements of their *Monell* claim related to the City's use of force. (Defs. Memo., pg. 18). Nonetheless, they contend that Plaintiffs have not identified a precise policy or policy language that they contend is unconstitutional, and, consequently, Plaintiffs' *Monell* claim should be dismissed claim insofar as it attempts to rely on an officially promulgated policy of the City. *Id*., pgs. 12-13.

Plaintiffs' allegations regarding the City's policies are as follows:

185.    Even if the SPD trained its officers in accordance with its own written policies on the use of force, such training was necessarily inadequate to instruct officers in the constitutional limits on force, because the policies themselves promote unconstitutional us[e] of non-deadly and deadly force.

186.    The SPD's policies on the use of force instruct officers that the degree of non-deadly force is objectively reasonable even when based on the officers' subjective evaluation and that officers may use deadly force when no immediate threat of harm actually exists. Both policies directly contradict what the United States Supreme Court has determined are the constitutional limits of the use of force and are thus facially unconstitutional.

187.    The SPD's policies further instruct that an officer may use deadly force when they reasonably believe a threat exists, regardless of whether the threat actually exists and regardless of whether the threat is immediate. A policy that instructs an officer that they may use deadly force against a suspect who does not actually pose an immediate threat of danger violates the constitutional limits on the use of force.

188.    Additionally, the United States Supreme Court has concluded that the objective reasonableness of a certain use of force must be judged from the perspective of a reasonable officer on the scene, not based on the particular officer's subjective evaluations. As such, in determining what degree of force is appropriate, officers may not consider subjective criteria. Thus, because the SPD policy defines objective reasonableness to include subjective criteria, it violates the constitutional limits on the use of force.

(Compl.).

Although Plaintiffs' allegations are couched as if in the actual terms of a policy, Plaintiffs do not allege identify the specific language of a City policy or otherwise provide facts to show where this policy may be found.  Moreover, the allegations are no more detailed than those set forth in *Lewis v. Horton*, also involving the City of Shreveport, that Judge Hicks found were insufficient to state a plausible claim for relief.  *See Lewis v. Horton*, 665 F.Supp.3d 801, 809 (W.D. La.2023); *see also* Amend. Compl., ¶¶ 60-65 [doc. # 10] in *Lewis v. Horton*, Civ. Action No. 22-0195 (W.D. La.).  The same result necessarily follows here.  *Id*.[10]

## II.    Motion to Strike

Motions to strike are governed by Rule 12(f), which authorizes a court to "order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  FED. R. CIV. P. 12(f).  "Motions to strike are disfavored and infrequently granted."  *United States v. Cushman & Wakefield, Inc*., 275 F. Supp.2d 763, 767 (N.D. Tex. 2002) (*citing Augustus v. Board of Public Instruction of Escambia County, Florida*, 306 F.2d 862, 868 (5th Cir. 1962)).  As the Fifth Circuit has noted:

> [p]artly because of the practical difficulty of deciding cases without a factual record it is well established that the action of striking a pleading should be sparingly used by the courts. * * * It is a drastic remedy to be resorted to only when required for the purpose of justice. * * * The motion to strike should be granted only when the pleading to be stricken has no possible relation to the controversy.

---

[10] Because the instant motion disposes of fewer than all claims and parties, it is not a final judgment and remains subject to revision at any time before conclusion of the case.  FED. R. CIV. P. 54(b).  Certainly, if, in the course of discovery, Plaintiffs uncover facts to support *Monell* liability against the City pursuant to an officially promulgated policy, then they may seek reconsideration of the judgment of dismissal, together with a proposed pleading that supports such a claim against the City.  Needless to say, Plaintiffs should not delay.

*Augustus*, 306 F.2d at 868 (citing *Brown v. Williamson Tobacco Corp. v. U.S.*, 201 F.2d 819, 822 (6th Cir. 1953)).

Moreover, "[a] disputed question of fact cannot be decided on a motion to strike . . . [and] when there is no showing of prejudicial harm to the moving party, the courts generally are not willing to determine disputed and substantial questions of law upon a motion to strike." *Augustus*, 306 F.2d at 868.  When questions of fact or law are present, the court should ". . . defer action on the motion and leave the sufficiency of the allegations for determination on the merits." *Id*.

Plaintiffs allege that the City has a pattern and practice of harassing its citizens, seizing individuals without probable cause, escalating minor offenses or non-offenses into situations involving the use of force, and engaging in excessive force against the community.  (Compl., ¶ 63).  To support their claim, Plaintiffs cite as many as eleven instances of alleged excessive use of force.  *Id*., ¶¶ 64-182.

Defendants seek to strike seven non-lethal use of force incidents referenced in the Complaint, *see* Compl, ¶¶ 64-70, 89-164, and 179-182, on the basis that they cannot be considered "fairly similar" to the incident at issue in this suit.[11]  Plaintiffs respond that all of the prior incidents cited in their Complaint are "reasonably similar" to the underlying incident because they all involved excessive use of force by a City police officer which resulted in injuries or death.  (Pl. Opp. Brief, pg. 20).  They further argue that Defendants will not be

---

[11]  The pattern of examples must have "similarity" and "specificity" with "sufficiently numerous prior incidents."  *Martinez v. Nueces Cnty., Texas*, 71 F.4th 385, 389 (5th Cir. 2023) (citations omitted); *Davidson v. City of Stafford, Texas*, 848 F.3d 384, 396 (5th Cir. 2017), *as revised* (Mar. 31, 2017).

prejudiced if the specified allegations are not stricken.  *Id.*

Upon consideration, Defendants' argument for striking the specified incidents asserted in the Complaint represents a disputed issue of law and/or fact that should be deferred for determination on the merits.  Striking the allegations from the Complaint serves no material or useful purpose where the allegations, even if "stricken," will not be removed from the record. Moreover, a jury rarely, if ever sees pleadings.  Defendants have not established that the drastic remedy of striking allegations is necessary.  Accordingly, Defendants' motion to strike is DENIED.

## III.    Motion for Protective Order

Finally, Defendants seek a protective order

> limiting Plaintiffs' *Monell* claim based on alleged unlawful patterns of use of force and/or negligent training, supervision, or discipline to incidents that are "fairly similar to what ultimately transpired;" specifically, to incidents involving an officer's use of lethal force by firearm against a fleeing suspect. Such an order is necessary to prevent Plaintiffs from engaging in discovery concerning incidents that are irrelevant and immaterial to their *Monell* claim and to prevent prejudice and undue hardship on Defendants.

(Defs. M/Prot. Order, pgs. 18-19.

Defendants do not cite any authority to support their request for a protective order.  Rule 26, however, provides that, upon a showing of good cause, a court may issue an order to "protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including [an order] . . .  forbidding the disclosure or discovery . . .  [or] forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters . . ."  FED. R. CIV. P. 26(c)(1)(A) & (D).  The party seeking the protective order must establish good cause for the entry of the order by making a "particular and specific demonstration of fact, as distinguished

from stereotyped and conclusory statements." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 102 n.16, (1981); *see also In re Terra Int'l, Inc.*, 134 F.3d 302, 306 (5th Cir. 1998). Furthermore, "Rule 26(c) confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36, 104 S.Ct. 2199 (1984).

Plaintiffs contend that the motion should be denied under for at least three reasons: "(1) Defendants did not file a certification of good faith attempt to confer, (2) Defendants have not demonstrated that such an order is necessary, and (3) Defendants have not made an adequate showing of undue burden." (Pl. Opp. Memo., pg. 21).

The Court agrees with Plaintiffs. Discovery has not yet commenced, and it is not known what discovery requests may be issued or opposed. Moreover, the parties may be able to come to an agreement regarding the proper scope of the discovery pertaining to the City's patterns of use of force. In addition, Defendants have not demonstrated that the as-yet unserved discovery presents an undue burden.

In sum, the Court finds that Defendants have not established good cause for issuance of a protective order at this stage of the proceedings. The motion for protective order is DENIED.

## Conclusion

For the above assigned reasons,

IT IS RECOMMENDED that the Rule 12(b)(6) motion for partial dismissal for failure to state a claim upon which relief can be granted [doc. # 16] filed by Defendants City of Shreveport and Maverick Caldwell, II, be GRANTED IN PART, DISMISSING, with prejudice, the following claims: Plaintiffs' claim against Maverick Caldwell, II, for unreasonable seizure

under the Fourth Amendment; and Plaintiffs' claims against the City of Shreveport for unreasonable seizure under the Fourth Amendment, for substantive due process violation under the Fourteenth Amendment, and for excessive force under the Fourth Amendment stemming from an officially promulgated policy.  FED. R. CIV. P. 12(b)(6).[12]

IT IS FURTHER RECOMMENDED that the motion to dismiss [doc. # 16] otherwise be DENIED.  Moreover,

IT IS ORDERED that Defendants' motion to strike and for protective order [doc. # 16] are DENIED.[13]

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing.  Timely objections will be considered by the District Judge before he makes a

---

[12] To the extent that the undersigned has expanded upon the grounds for dismissal urged by Plaintiffs, the instant report and recommendation provides adequate notice to the parties.  *McCoy v. Wade*, 2007 WL 1098738, *1 (W.D. La. Mar. 12, 2007) (the report and recommendation itself provides adequate notice to the parties).  In any event, the court possesses the inherent authority to dismiss a party sua sponte.  *McCullough v. Lynaugh*, 835 F.2d 1126, 1127 (5th Cir. 1988) (citing *Link v. Wabash R.R. Co.*, 370 U.S. 626, 630-31 (1962)); *see also Spann v. Woods*, 1995 WL 534901 (5th Cir. 1995) (unpubl.) (the district court sua sponte dismissed claims under 12(b)(6) although the defendants never filed a motion to dismiss, nor did they plead failure to state a claim in their answer).

[13] As these motions are not one of the motions excepted in 28 U.S.C. § 636(b)(1)(A), nor dispositive of any claim on the merits within the meaning of Rule 72 of the Federal Rules of Civil Procedure, this ruling is issued under the authority thereof, and in accordance with the standing order of this court.  Any appeal/objection must be made to the district judge in accordance with Rule 72(a).

final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

In Chambers, at Monroe, Louisiana, on this 14th day of August, 2025.

KAYLA DYE McCLUSKY
UNITED STATES MAGISTRATE JUDGE